IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLOOMBERG L.P., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL TRADE COMMISSION, ) <br> ) <br> Defendant. ) | Case No. 22-cv-3309 (RC) |

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

The FTC has withheld under the Hart-Scott-Rodino Act and Exemption 7(A) "close at your own peril" letters it sent, after the expiration of the HSR waiting period, to companies who have filed HSR merger notifications. The "promiscuous" use of these letters has been the subject of scrutiny. FTC, Noah Joshua Phillips, *Disparate Impact: Winners and Losers from the New M&A Policy* (April 27, 2022) at 9-10.[1]

The FTC has not established that any exemption applies. The FTC's interpretation of HSR's secrecy provision would conflict with the FTC's long-standing practice of disclosing materially identical "closing letters." And its purported Exemption 7(A) evidence for both the existence of any pending investigations and the likely harm from disclosure is too vague and lacks the required context and circumstances of individual instances to meet its burden of proof. Accordingly, the Court should grant summary judgment to Bloomberg and order the information released.

---

[1] www.ftc.gov/system/files/ftc_gov/pdf/Phillips_Keynote-Berkeley_Forum_on_MA_FINAL.pdf ("Phillips Speech").

Even if the Court were to find the FTC's Exemption 7(A) evidence sufficient to meet its prima facie case, however, that evidence is contradicted by the declaration of antitrust professor and former FTC Commissioner Joshua D. Wright explaining why release of the letters could not reasonably be expected to harm any FTC investigations or proceedings. Thus, at the very least, there is a dispute of fact as to the FTC's Exemption 7(A) claim and the FTC's motion should be denied on that exemption. Further, even if the FTC established its exemption claims as to the addressee information in these letters, it has failed to show that the dates of the letters are exempt. That information is both readily segregable and serves a useful purpose by showing how many of these controversial letters were sent and when, so the Court should grant summary judgment to Bloomberg on this information even if it finds addressee information to be exempt.

## I.  FACTUAL BACKGROUND

The FTC accurately describes the history of Bloomberg's FOIA request and the general context surrounding the "close at your own peril" letters Bloomberg requested. Def. Br. at 2-5. In sum, the Hart-Scott-Rodino Act requires merging companies to make disclosures to the FTC and take no action until a designated waiting period has concluded. SUMF ¶¶ 1-13. The FTC recently began telling merging companies that it cannot conduct its review within the waiting period and that the merging companies can proceed only at their own peril. SUMF ¶¶ 16-20. Bloomberg requested those records, and in response, the FTC pointed to a blank form letter containing the content of the letters but withheld the dates they were sent and all addressee information, first under Exemption 7(A), and then in deciding Bloomberg's appeal, also based on HSR and Exemption 3. SUMF ¶¶ 22, 28, 32, 36-41.

Bloomberg adds three more facts to the story, the significance of which is explained in the Argument section below: (1) going back for at least 25 years, the FTC has publicly released unredacted HSR "closing letters," which are distinct from the "early termination letters" the FTC

discusses in its brief (Pl. Add'l Facts ("PAF") ¶ 1); (2) at least some of the "close at your own peril" letters correspond to proposed mergers the FTC is not currently investigating, either because it has not started any investigation or because it has completed any investigation (PAF ¶ 2); and (3) at least some of the letters likely correspond to proposed or consummated mergers that have already been made public either in the parties' SEC filings or through press releases issued by the parties (PAF ¶¶ 3-4).

Finally, the FTC's Exemption 7(A) claims rely on the Vedova Declaration, but the key paragraphs of that declaration are disputed by the Wright Declaration.

## II.     LEGAL STANDARDS

"FOIA exemptions must be narrowly construed[.]" *Citizens for Resp. & Ethics in Washington v. DOJ*, 58 F.4th 1255, 1261 (D.C. Cir. 2023). A defendant agency "bears the burden to justify nondisclosure under any exemption it asserts." *Id.* at 1262. Agency affidavits must "describe the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *Id.* An agency has not met its burden when there is "contrary evidence in the record." *Id.*

## III.    ARGUMENT

### A.    HSR does not prohibit the release of the requested letters under Exemption 3.

The FTC argues that it is prohibited by HSR Section 18a(h) from releasing its "close at your own peril" letters. That argument cannot be reconciled with the FTC's long-standing practice of releasing similarly situated closing letters, or with the plain text of the statute. The Court should therefore reject the FTC's argument.

Agencies are presumed to comply with the law. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("presumption of legitimacy [is] accorded to the Government's official conduct"); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of

regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."); *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("clear evidence required to overcome the presumption that . . . official conduct was proper"); *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 975 (D.C. Cir. 1980) ("until evidence appears to the contrary, agencies are entitled to a presumption of administrative regularity and good faith"); *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 24 (D.C. Cir. 1984) (relying on "presumption of agency regularity and the deference one must give to the agency in charge of insuring proper compliance with the pollution laws"); *see also* Def. Br. at 9-10 (relying on FTC's alleged practices as authority for its interpretation of HSR provisions). Exemption 3 is not discretionary: an agency must withhold information that another statute prohibits it from releasing. Therefore, any proposed interpretation of HSR's secrecy provision that would render the FTC's own practices in violation of those provisions is suspect at best and should be rejected.

The FTC has long released on its website unredacted copies of closing letters sent to companies who disclosed their proposed mergers pursuant to HSR. Nylen Decl. at ¶ 5. For HSR secrecy purposes, those letters are materially the same as the requested "close at your own peril" letters, since neither are the actual materials filed with the FTC and both disclose the identities of companies who made HSR merger filings. The FTC's brief fails to address its release of these closing letters, instead distinguishing the "close at your own peril" letters from its statutorily required disclosure of "early termination letters." Def. Br. at 13-14; Def. SUMF ¶¶ 65-67.

Unlike early termination letters, however, closing letters are not subject to specific disclosure requirement under Section 18a(b)(2), so that cannot be an explanation for the FTC's apparent inconsistency in disclosing closing letters while claiming an exemption for "close at your

own peril" letters. *See* 15 U.S.C. § 18a(b)(2). Nor can the FTC rely on any perceived difference in harm from release of closing letters versus "close at your own peril" letters (Def. Br. at 11): the question under HSR is only whether the material is "information or documentary material filed with the Assistant Attorney General or the Federal Trade Commission pursuant to this section," not whether any harm would result if the information were to be released. 15 U.S.C. § 18a(h); *see also* Def. Br. at 9 (arguing that pre- or post-transaction status is irrelevant to HSR secrecy).

Because the FTC "consistently has taken" (Def. Br. at 10-11) the presumed-legal position that its closing letters to merging companies are not subject to HSR's secrecy provision, and because there is no material difference between those letters and "close at your own peril" letters, the requested letters cannot be exempt under HSR Section 18a(h). 15 U.S.C. § 18a(h).

Further, interpreting Section 18a(h) to exclude the FTC's letters to merging companies is consistent with the plain language of the statute, which presumably explains the FTC's disclosure of closing letters, as well as the FTC's failure to assert HSR over the requested letters in its initial denial of the request. Compl. Ex. 2 (citing only Exemption 7(A)). If Congress wanted to make the FTC's letters to merging companies secret, it could have said so expressly. Instead it restricted only what is "filed with"—not "sent by"—the FTC. 15 U.S.C. § 18a(h). And requiring disclosure of the FTC's letters to merging companies is also consistent with FOIA's fundamental purpose of protecting "the basic right of the public to be informed about what their government is up to." *Campaign Legal Ctr. v. DOJ*, 34 F.4th 14, 19 (D.C. Cir. 2022); *see* Phillips Speech at 9-10 (criticizing FTC's excessive use of "close at your own peril" letters).

Nor do the cases on which the FTC relies support its claim. An agency bears the burden of proving its exemption claims, so the question is not whether any court "has ever permitted disclosure," Def. Br. at 10, but rather, whether any court has ever permitted secrecy. The FTC has

identified none.  *See id.*  More specifically, *Mattox v. FTC*, 752 F.2d 116, 119-24 (5th Cir. 1985) and *Lieberman v. FTC*, 771 F.2d 32, 37-40 (2d Cir. 1985) addressed whether disclosure to state attorneys general is disclosure to the "public" under HSR, and *Pharmaceutical Research & Manufacturers of America v. FTC*, 44 F. Supp. 3d 95, 131 (D.D.C. 2014) interpreted "any administrative or judicial action or proceeding."  *See* Def. Br. at 10.  None of these cases interpreted the scope of "information or documentary material filed with the Assistant Attorney General or the Federal Trade Commission pursuant to this section" or held that HSR prohibits the FTC from releasing letters it sends to merging companies.

Finally, the FTC relies on policy arguments about the supposed harm that it says will result if it discloses the letters.  Def. Br. at 11-12.  But the Supreme Court has been unmoved by policy justifications as a basis to alter the scope of FOIA exemptions.  *Food Mktg. Inst. v. Argus Leader Media*, 204 L. Ed. 2d 742, 139 S. Ct. 2356, 2366 (2019); *see also N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1261 (D.C. Cir. 2020) (applying *Argus Leader* to reject policy arguments).  And in any event, to the extent there are legitimate concerns about harm to the merging companies or to any particular FTC investigation based on their specific facts, those concerns are addressed elsewhere in the statute: harm to the merging companies from release of confidential information would typically support withholding under Exemption 4 (which the FTC has not even asserted in this case), and harm to the FTC's investigations would support withholding under Exemption 7(A) (which the FTC asserts only implausibly and without sufficient support, as discussed below).

The Court should reject the FTC's Exemption 3 claim under HSR.

### B. The FTC has not proven its Exemption 7(A) claim.

#### 1. The FTC has not met the threshold requirement of "pending or reasonably anticipated" law enforcement proceedings.

The FTC has failed to show any investigation is pending for any of the individual letters it has withheld, and there is evidence showing that in many instances, there likely is no pending investigation. As a result, the FTC has not met its burden under Exemption 7(A). *Mapother v. DOJ,* 3 F.3d 1533, 1540 (D.C. Cir. 1993) (enforcement proceedings must be "pending or reasonably anticipated" (emphasis removed)).

In an April 2022 speech, FTC Commissioner Noah Phillips explained, in referencing the "close at your own peril" letters at issue here, that "[s]ome of those are in matters where we haven't even begun to conduct an investigation. In others, the real investigation is over and we lack a reasonable basis to conclude the merger violates the law." Phillips Speech at 9-10. For the letters corresponding to those mergers for which no investigation has begun or any investigation has concluded, there are no pending or reasonably anticipated law enforcement proceedings, and the letters cannot be exempt under Exemption 7(A).

The FTC has failed to address any of the specific letters, and its declaration does not even claim that all of the letters correspond to actually pending investigations, stating only that the FTC's letters *said* to the potentially merging companies that they are—or more precisely, that they *were* pending at the time the letters were sent. Vedova Decl. at ¶¶ 10-12; Def. Br. at 16. This is inadequate to satisfy the FTC's burden of proof. *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) ((holding that "Exemption 7(A) is temporal in nature," and "reliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close"); *Boyd v. DOJ*, 475 F.3d 381, 386 (D.C. Cir. 2007) (requiring proof that investigation is ongoing); *Ctr. for Nat. Sec. Stud. v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) ("it is sufficient that

the government's *ongoing* September 11 terrorism investigation is likely to lead to such [enforcement] proceedings" (emphasis added)); *Ctr. For Nat. Sec. Stud. v. DOJ*, 215 F. Supp. 2d 94, 101 (D.D.C. 2002), aff'd in part, rev'd in part, 331 F.3d 918 (D.C. Cir. 2003) ("Although typically there must be a pending or a specific concrete prospective law enforcement proceeding at issue, Exemption 7A has also been extended to protect information related to *ongoing* investigations likely to lead to such proceedings, as in this case." (emphasis added, D.C. Circuit cites omitted)). Indeed, in denying Bloomberg's request, the FTC's FOIA office simply repeated denials of previous requests for these letters, without considering whether any of the investigations had closed in the intervening time. SUMF ¶ 31.

The FTC has failed to show that each of the letters pertains to any pending or reasonably anticipated law enforcement proceedings under Exemption 7(A).

> **2.    The FTC has not proven that disclosing the letters could reasonably be expected to interfere with any investigation or future enforcement proceedings.**

Even if the FTC had proven that there are pending investigations corresponding to each of the letters, it must also prove that release of the letters "could reasonably be expected to interfere" with those investigations or future enforcement proceedings. 5 U.S.C. § 552(b)(7)(A). And in light of the 2016 "foreseeable harm" amendments, 5 U.S.C. § 552(a)(8), that showing must be "focused and concrete." *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 110, 128 (D.D.C. 2021), appeal dismissed, No. 21-5293, 2022 WL 801357 (D.C. Cir. Mar. 15, 2022) (accepting argument "that the freestanding foreseeable harm requirement in 5 U.S.C. 552(a)(8) can still guard against general explanations and boilerplate language used to justify withholdings" and requiring harm to be shown "in a focused and concrete way,"

notwithstanding Exemption 7(E)'s "could reasonably be expected" language[2] (cleaned up)); *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021) (foreseeable harm provision requires "focused and concrete demonstration"); *but see Citizens for Resp. & Ethics in Washington v. Dep't of Homeland Sec.* ("*CREW*"), 525 F. Supp. 3d 181, 192 (D.D.C. 2021) (noting lack of Circuit precedent and declining to apply enhanced foreseeable harm standard under Exemptions 7(E) and 7(F)).

The FTC has not made this showing, under the foreseeable harm provision or under Exemption 7(A) itself. The targets of any FTC pre-merger investigations are the recipients of the very letters at issue. Thus, the typical Exemption 7(A) concerns about a tipped-off target of an investigation destroying evidence or intimidating witnesses already exist and do not factor into the analysis. As explained by the Justice Department, "[c]ourts have held that Exemption 7(A) ordinarily will not afford protection when the target of the investigation has possession of, or has submitted, the information in question[.]" Dep't of Justice, Guide to the Freedom of Information Act, Exemption 7(A), at 18, www.justice.gov/oip/page/file/1485791/download (collecting cases). And even if the FTC provided a legal justification for its third-party interference argument, its claims (Def. Br. at 17; *see also* Vedova Decl. at ¶¶ 23-27) of "meddlesome inquiries" and an "avalanche of reactions" caused by "the press, competitors, analysts, and others" are no more than "general explanations and boiler plate language." *CREW*, 525 F. Supp. 3d at 192 n.4.

The FTC also fails to address the specific context of any of these letters. For publicly traded companies—which surely includes at least some of the letter recipients—the fact of their HSR merger filings, and any updates, would be disclosed in public SEC filings, where they are

---

[2] It does not appear that courts in this Circuit have addressed the foreseeable harm standard in the context of Exemption 7(A), but both 7(A) and 7(E) have the same "could reasonably be expected" language.

available to press, competitors, analysts, and the general public. Nylen Decl. at ¶ 6. Merging companies, including those not subject to SEC disclosure requirements, likely issued press releases announcing their proposed mergers or the consummation of their mergers after the expiration of the HSR waiting period. Nylen Decl. at ¶ 7. The FTC offers no explanation for how any of its claimed third-party-initiated harms from release of the letters could possibly come to any FTC investigations where the fact of the proposed merger is already publicly known. The FTC therefore falls short of both the "context specific" requirement under the foreseeable harm provision and, even if this Court does not apply that standard under Exemption 7(A), the standard for categorical Exemption 7 claims requiring the range of "circumstances" across the records in the claimed category to be sufficiently similar. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 370 ("Instead, what is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward. Naturally, this inquiry is context specific."); *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) ("Only when the range of circumstances included in the category characteristically supports an inference that the statutory requirements for exemption are satisfied is such a rule appropriate." (cleaned up)); *Citizens for Resp. & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1099 (D.C. Cir. 2014) (citing *Nation Magazine* for same proposition).

The FTC has not provided sufficient detail to support its legally suspect third party interference claims, and has not addressed the specific context and circumstances of the particular alleged investigations. Therefore, it has not met its burden of proving that release "could reasonably be expected to interfere" with any investigations, none of which the FTC has even shown to be ongoing in the first place.

      **C.**      **At best for the FTC, there is a factual dispute on its Exemption 7(A) claim.**

Because the FTC has not met its burden under FOIA, there is no need for the Court even to consider additional evidence. But if the Court disagrees, at most, there is a dispute of fact on each of the key paragraphs of the Vedova Declaration as to the claimed harms that would result if the "close at your own peril" letters are disclosed.

As discussed in the declaration of antitrust professor and former FTC Commissioner Joshua D. Wright, "disclosing the warning letters could not reasonably be expected to interfere with any FTC merger investigations or enforcement proceedings. Nor could disclosure reasonably be expected to harm the merging parties or other third parties." Wright Decl. at ¶ 17. In his declaration, former Commissioner Wright supports that conclusion by addressing and refuting each of the paragraphs of the Vedova Declaration regarding alleged harm to the FTC's investigations. *Id.* at ¶¶ 8-16.

Market participants "are heavily involved with and highly aware of FTC investigations into proposed mergers," and third parties "diligently follow and track the activities of their rivals, suppliers, customers, and other industry participants," so they are "virtually certain to become aware of the transaction and to follow any FTC investigation," "[e]ven if the merger is not publicly announced." *Id.* at ¶ 8. In fact, "if the public disclosure of a warning letter reaches a relevant third party that the FTC somehow missed in its initial investigation, then the FTC should welcome the additional feedback." *Id.* And the FTC "is willing and able—as it should be—to ignore 'non-germane input' from any entity related to any investigation." *Id.* at ¶ 9.

As to the FTC's vague claims about harm to potential divestiture relief, "the FTC is always free to investigate or challenge a merger after consummation," and potential divestiture buyers "recognize this possibility regardless of . . . whether a warning letter is made public." *Id.* at ¶ 10. Similarly, the FTC's "delayed closing" claim ignores that potential mergers are usually already

known to potential divestiture buyers through SEC filings or otherwise, and whether a merger has closed or not is readily determined from whether the companies continue to operate separately. *Id.* at ¶ 11. *See also id.* at ¶ 12 (disputing FTC's "harm to remedies" claim for similar reasons).

Finally, former Commissioner Wright explains that if anything, it is the FTC's **practice** of **issuing** warning letters, not the **disclosure** of particular letters, that may make parties less inclined to cooperate with the FTC. *Id.* at ¶ 13. He also explains that disclosure of the warning letters identifying the merging companies would not indicate to third parties that their sensitive business information would not be protected. *Id.*

Because there is contrary evidence in the record regarding the FTC's Exemption 7(A) claims of harm, the FTC is not entitled to summary judgment on Exemption 7(A), even if the Court finds, which it should not, that the FTC met its prima facie burden of showing that any investigations are ongoing and that release of the "close at your own peril" letters could reasonably be expected to harm them. *Citizens for Resp. & Ethics in Washington*, 58 F.4th at 1262.

        **D.**      **Even if the FTC was correct on either of its exemption claims, the date and content of the letters are reasonably segregable from the addressees.**

Even if the addressees of these letters are in fact exempt under HSR or Exemption 7(a) (which they are not), it cannot be disputed and has not been disputed that the FTC can easily redact that information and produce the remainder. Instead, FTC argues this would be a "superfluous exercise" given that the form letter has been made public, and that "Bloomberg did not request" segregation. SUMF ¶ 69; *see also* Def. Br. at 13. Disclosure of redacted letters is far from superfluous: it would indicate the number of letters that were sent and when. *See* Phillips Speech at 9-10 (arguing against FTC's overuse of the letters). And there was no obligation for Bloomberg to have specifically requested that segregable material be produced: it is the FTC's legal obligation to do so. 5 U.S.C. § 552(a)(8)(A)(ii).

## IV. CONCLUSION

For these reasons, the FTC has not met its burden and the requested letters should be ordered released.

Dated: May 12, 2023                                        Respectfully Submitted,

                                                           */s/ Matthew V. Topic*
                                                           Matthew V. Topic, Bar No. IL0037
                                                           Josh Loevy, Bar No. IL0105
                                                           Merrick J. Wayne, Bar No. IL0058
                                                           Shelley Geiszler, Bar No. IL0087
                                                           Stephen Stich Match, Bar No. MA 0044
                                                           LOEVY & LOEVY
                                                           311 N. Aberdeen, Third Floor
                                                           Chicago, Illinois 60607
                                                           Tel.: (312) 243-5900
                                                           Fax: (312) 243-5902
                                                           foia@loevy.com

                                                           *Attorneys for Plaintiff*