UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BLOOMBERG LP, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   22-3309 (RC) |
| | : | |
| v. | : | Re Document Nos.:   11, 14 |
| | : | |
| FEDERAL TRADE COMMISSION, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

### I.  INTRODUCTION

Plaintiff Bloomberg LP has filed suit against Defendant Federal Trade Commission ("FTC") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain documents the FTC has withheld from disclosure.  Before the Court are the FTC's motion for summary judgment ("Def.'s Mot."), ECF No. 11, and Bloomberg's cross-motion for summary judgment ("Pl.'s Mot."), ECF No. 14-1, which includes Bloomberg's opposition to the FTC's motion for summary judgment.  The FTC has filed a combined opposition to Bloomberg's cross-motion for summary judgment and reply in support of its own motion ("Def.'s Reply"), ECF No. 20.  And Bloomberg has filed a reply in support of its own motion, ("Pl.'s Reply") ECF No. 23.  For the following reasons, the Court **GRANTS** in part and **DENIES** in part the FTC's motion for summary judgment and **GRANTS** in part and **DENIES** in part Bloomberg's motion for summary judgment.

## II.  BACKGROUND

The Hart-Scott-Rodino Act requires certain business entities that plan to "acquire, directly or indirectly, any voting securities or assets of any" other business to file a notification[1] with the FTC if the transaction is worth over a certain dollar amount.  15 U.S.C. § 18a(a).  After business entities file a pre-transaction notice, the FTC has thirty days to review that notice to determine whether the transaction would violate the antitrust laws.  *Id.* § 18a(b), (d).  As a general matter, transactions that are subject to the pre-transaction notice requirement may not be consummated until after the thirty-day waiting period has elapsed.  *Id.* § 18a(b).  In certain circumstances—such as when the FTC requests more information from the transacting businesses—the waiting period deadline may be extended.  *Id.* § 18a(e)(2), (g)(2).  If the FTC believes that the transaction would violate the antitrust laws, it may file an action to prevent the transaction.  *Id.* § 45.  Even if the FTC does not file an action within the thirty-day waiting period, however, it may still file an action later to enforce the antitrust laws—including after the transaction has been consummated.  *Id.* §§ 18, 45.

This case arises from the FTC's practice of sending what Bloomberg calls "close at your own peril," and what the FTC calls "pre-consummation warning," letters.  Def.'s Statement of Undisputed Facts ("Def.'s Undisputed Facts") at 3–4, ECF No. 11; Pl.'s Mot. at 2.  These are letters the FTC sends to business entities that have filed pre-transaction notices informing those businesses that the FTC will not be able to complete its investigation of their transaction within the 30-day deadline.  The "close at your own peril" letters further alert recipients that the FTC's investigation remains open and that, should their transaction proceed, the FTC may seek to enforce the antitrust laws with respect to the transaction at a later date.  Bloomberg sent the FTC

---

[1] The Court often refers to these notifications as "pre-transaction notices."

a request under the Freedom of Information Act seeking that the FTC disclose "all pre-consummation warning letters issued by the agency since July 2021." Freedom of Information Act Request, ECF No. 11-2 at 7–8.  The FTC made the determination that the letters were exempt from FOIA disclosure.  Def.'s Undisputed Facts at 6.  Bloomberg filed an administrative appeal, where the agency's determination was affirmed.  *Id.* at 7.  Accordingly, Bloomberg brought suit in this Court to compel the FTC to disclose the letters.  Compl. at 1, ECF No. 1.

### III.  LEGAL STANDARD

"The Freedom of Information Act is meant 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'"  *Woodward v. U.S. Marshals Serv.*, No. CV 18-1249, 2022 WL 296171, at *2 (D.D.C. Feb. 1, 2022) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).  Under FOIA, government agencies must disclose requested government records unless exempt from doing so by statute.  5 U.S.C. § 552(b).  If an agency refuses to disclose records, the requesting party may then seek to enjoin the agency from withholding the records.  5 U.S.C. § 552(a)(4)(B).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Louise Trauma Ctr. LLC v. U.S. Dep't of Just.*, No. CV 20-3517, 2023 WL 6646335, at *2 (D.D.C. Oct. 12, 2023) (citation omitted).  The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To prevail on a motion for summary judgment in a FOIA case, 'the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements.'"  *Woodward*, 2022 WL 296171, at *2 (quoting *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980)); *Niskanen Ctr. v. FERC*,

436 F. Supp. 3d 206, 212 (D.D.C. 2020), *aff'd*, 20 F.4th 787 (D.C. Cir. 2021) ("The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they 'describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (citation omitted)).

An agency's declarations are accorded a presumption of good faith, *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), but the withholding agency bears the burden of demonstrating that its withholding is proper, 5 U.S.C. § 552(a)(4)(B). "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure,' while the 'burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (cleaned up) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)). Moreover, FOIA exemptions are "narrowly construed." *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 50 (D.D.C. 2019) (quoting *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007)). Even if some requested material is exempt from disclosure, "any reasonably segregable non-exempt parts of records" must be "disclosed after redaction of exempt information." *Am. Immigr. Council v. U.S. Customs & Border Patrol*, No. CV 19-2965, 2023 WL 2755412, at *2 (D.D.C. Apr. 3, 2023) (cleaned up).

## IV.  ANALYSIS

The FTC relies on two statutory FOIA exemptions to justify withholding the "close at your own peril" letters that Bloomberg seeks. The Court addresses each exemption in turn.

### A.  FOIA Exemption 3

The FTC contends that FOIA Exemption 3—in conjunction with the Hart-Scott-Rodino Act—exempts it from having to disclose the pre-consummation warning letters that Bloomberg seeks.  Def.'s Mot. at 8–9.  "FOIA Exemption 3 authorizes agencies to withhold records that are 'specifically exempted from disclosure by statute.'"  *Corley v. Dep't of Just.*, 998 F.3d 981, 984 (D.C. Cir. 2021) (quoting 5 U.S.C. § 552(b)(3)).  "A statute qualifies for the exemption if it 'requires that . . . matters be withheld from the public in such a manner as to leave no discretion on the issue' or if it 'establishes particular criteria for withholding or refers to particular types of matters to be withheld.'"  *Id.* (quoting 5 U.S.C. § 552(b)(3)(A)).  "To withhold records under Exemption 3, an agency must make two showings: 'that the statute [ ] is one of exemption as contemplated by Exemption 3,' and 'that the withheld material falls within the statute.'"  *Id.* at 984–85 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)).

The FTC asserts that Exemption 3 applies because the Hart-Scott-Rodino Act contains a provision prohibiting FOIA disclosure of the content of the letters that Plaintiff seeks.  *See* Def.'s Mot. at 9.  In particular, the Hart-Scott-Rodino Act states that "[a]ny information or documentary material filed with . . . the Federal Trade Commission pursuant to this section shall be exempt from disclosure under [FOIA], and no such information or documentary material may be made public, except as may be relevant to any administrative or judicial action or proceeding."  15 U.S.C. § 18a(h).  Because the Hart-Scott-Rodino Act specifically creates an exemption from FOIA, there is no question that "the statute is one of exemption as contemplated by Exemption 3."  *See Corley*, 998 F.3d at 984 (cleaned up).  The relevant question, then, is whether the letters the FTC seeks to withhold "fall[] within the statute."  *Id.* (quotation marks omitted).  The Court

concludes that some—but not all—of the information contained in the FTC's letters is covered by the Hart-Scott-Rodino Act's disclosure exemption.

The Court begins with the plain meaning of the statute, which the Court reads as prohibiting the FTC from disclosing "close at your own peril" letters if they contain information that the FTC has solely because it received a pre-transaction notice.  As explained above, the Hart-Scott-Rodino Act prohibits disclosure of "[a]ny information . . . filed" with the FTC pursuant to the Act.  15 U.S.C. § 18a(h).  Parsing out the phrase "any information," the Court observes that the word "any" must be interpreted broadly.  *See Lisack v. Comm'r of Internal Revenue*, 68 F.4th 1312, 1320 (D.C. Cir. 2023) ("The Supreme Court has 'repeatedly explained' that 'the word "any" has an expansive meaning.'" (quoting *Patel v. Garland*, 596 U.S. 328, 338 (2022))).  And "information" is "[k]nowledge communicated concerning some particular fact, subject, or event; that of which one is apprised or told; intelligence, news." *Information*, OXFORD ENGLISH DICTIONARY ONLINE, https://doi.org/10.1093/OED/4797063575 (last visited Jan. 16, 2023).  Thus, to the extent that the FTC's "close at your own peril" letters contain any kind of knowledge communicated to the FTC by the filers of pre-transaction notices, that information is exempt from disclosure pursuant to FOIA and the Hart-Scott-Rodino Act.

Bloomberg asserts that "[t]he fact of a[] [Hart-Scott-Rodino] filing is not itself 'information … filed with' the FTC."  Pl.'s Reply at 6.  But Bloomberg's assertion conflicts with the plain text of the statute.  This is so because a pre-consummation letter recipient's identity is information about *who* has filed a pre-transaction notice.  And the FTC knows who filed a pre-transaction notice because it received that information pursuant to the Hart-Scott-Rodino Act.  Accordingly, the FTC has explained with reasonably specific detail that the letters contain information provided to the FTC by filers of pre-transaction notices and there is no reason to

believe the FTC's declarations were made in bad faith.  *See* Decl. of Holly Vedova at 4–5, ECF No. 11–1; Suppl. Decl. of Holly Vedova at 3–4, ECF No. 22–1.

Bloomberg further argues that the letters cannot be exempt from disclosure under the Hart-Scott-Rodino Act because the FTC has published letters with similar information in the past.  *See* Pl.'s Mot. at 4–5; Pl.'s Reply at 3–7.  The Court disagrees.  While past agency practice may be informative, it is certainly not dispositive, and it cannot trump the plain text of the statute.  As explained above, the plain text of the Hart-Scott-Rodino Act prohibits disclosure of any information filed with the FTC pursuant to the Act.  Even if true, the fact that the FTC may have released such information in the past does not change the analysis here; the Court cannot conclude that disclosing the letters would be "lawful merely because the agency did something similar in the past." *Capital Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp. 3d 25, 51 n.19 (D.D.C. 2020).  Moreover, on some past occasions, the FTC has explicitly refused to turn over information obtained from pre-transaction notices.  *See, e.g.*, *Mattox v. F.T.C.*, 752 F.2d 116, 119 (5th Cir. 1985) (affirming the FTC's decision not to disclose pre-transaction notice information to Texas Attorney General).  Therefore, even if the Court could look to past agency practice to determine the Act's meaning, the FTC's past practice was, at most, inconsistent.

Bloomberg argues that even if most of the "close at your own peril" letters are exempt from disclosure, some information in some letters may be segregable and should be disclosed: namely, (1) information that has previously been publicly disclosed, (2) the non-individualized boilerplate language of the letters, and (3) the dates of the letters.

Bloomberg argues that some pre-transaction notice filers' identities have already been released publicly and therefore are not exempt from disclosure.  *See* Pl.'s Mot at 3, 9–10; Pl.'s Reply at 8.  The Hart-Scott-Rodino Act states that pre-transaction notice information may not

7

"be made public" by the FTC.  15 U.S.C. § 18a(h).  The word "made" in this provision conveys the idea that the FTC may not "bring about" the public disclosure of information filed pursuant to the Hart-Scott-Rodino Act.  *See Made*, OXFORD ENGLISH DICTIONARY ONLINE https://doi.org/10.1093/OED/1086486179 (last visited Jan. 16, 2023) ("To produce by action, bring about (a condition of things, a state of feeling).").  However, if information is *already* public before the FTC disclosure, the FTC does not produce that result by later disclosing the information.  Accordingly, to the extent that information in the FTC's "close at your own peril" letters has previously been made public by pre-transaction notice filers, it is not exempt from disclosure under FOIA Exemption 3.

This interpretation is also consistent with the D.C. Circuit's public domain doctrine. "Under the 'public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record.'" *Brown v. Dep't of State*, 317 F. Supp. 3d 370, 375 (D.D.C. 2018) (quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) (explaining that "the government may not rely on an otherwise valid exemption to justify withholding information that is already in the 'public domain'").

However, before the Court will order information disclosed under the public domain doctrine, it "must be confident that the information sought is truly public and that the requester [will] receive no more than what is publicly available." *Brown*, 317 F. Supp. 3d at 375 (quoting *Cottone*, 193 F.3d at 555).  Accordingly, courts in this District have held that "[t]o take advantage of this doctrine, a plaintiff must 'establish[ ] that the information he seeks has entered and remains in the public domain.'" *Id.* (citation omitted); *Cottone*, 193 F.3d at 554 ("[T]he party advocating disclosure bears the initial burden of production; for were it otherwise, the

government would face the daunting task of proving a negative: that requested information had not been previously disclosed."). Bloomberg has provided a list of internet links to public announcements of transactions—some of which reference the filing of pre-transaction notices. *See* Decl. of Leah Nylen, Ex. B., ECF No. 14–3; Pl.'s Reply at 7–9, 14. To the extent that these links publicly disclose pre-transaction notice information—*i.e.*, the identities of business entities when the entity itself has announced that it has filed a pre-transaction notice—that information is not exempt from FOIA disclosure and is segregable.[2] Accordingly, the FTC must disclose "close at your own peril" letters, including the identity of the filing business, when Bloomberg has demonstrated that that entity itself has publicly disclosed that it has filed a pre-transaction notice.[3]

      Bloomberg also argues that the boilerplate language and the dates of the letters are segregable and should be disclosed. Pl.'s Mot. at 12. As Bloomberg points out, the boilerplate language and dates of the "close at your own peril" letters do not reflect information that was filed with the FTC in pre-transaction notices. *Id.*; Pl.'s Reply at 19. The Court separately addresses the boilerplate language and the date on which the letter was sent below.

---

[2] Because the burden of demonstrating that information is already in the public domain rests with Bloomberg, the FTC is not required to search beyond the examples that Bloomberg has provided. If Bloomberg believes there are additional instances of public disclosures by pre-transaction filers that make FOIA Exemption 3 inapplicable to a specific "close at your own peril" letter sent to that entity, it must demonstrate that the information is publicly available before the FTC is required to disclose that information. *See Cottone*, 193 F.3d at 554. Thus, if Bloomberg wishes to obtain "close at your own peril" letters based on other public disclosures that it has not included here, it may seek that information in a new FOIA request.

[3] To the extent that Bloomberg suggests that the FTC must confirm the identity of filers disclosed by third-parties, rather than disclosed by the filing entity itself, that proposition is mistaken. *Djenasevic v. Exec. Off. of United States Att'ys*, 319 F. Supp. 3d 474, 484 (D.D.C. 2018) ("[T]he public domain exception only applies to information 'in the public domain by official disclosure.'" (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007))).

Bloomberg seeks disclosure of the dates on which the "close at your own peril" letters were sent so that, if nothing else, it can determine the volume and frequency at which the FTC sent these types of letters. The FTC argues that, although the date on which a "close at your own peril" letter is sent is not exempt itself, that date should be protected nonetheless because, combined with other publicly available information, that date may allow the public to deduce information filed with the FTC that is categorically protected—such as the dates of pre-transaction notices or business entities' identities. Def.'s Reply at 14. But the dates on which the "close at your own peril" letters were sent cannot be used to deduce the date on which a business entity submitted its pre-transaction notice. This is because the FTC can send "close at your own peril" letters any time before the expiration of the pre-consummation waiting period, which ranges from a month to longer, depending on whether there is an extension. *See* 15 U.S.C. § 18a(e)(2) (permitting extension of investigation deadline). The FTC does not explain in any tangible way how members of the public could use the dates of "close at your own peril" letters—which are untethered to the dates of pre-transaction notices—to deduce the dates of pre-transaction notices or the identities of filers.[4] *See Kwoka v. Internal Revenue Serv.*, No. 17-CV-1157, 2018 WL 4681000, at *2–3 (D.D.C. Sept. 28, 2018) (rejecting IRS Exemption 3 argument that release of non-exempt material would permit plaintiff to deduce identities of taxpayers because "[e]ven armed with the information she requests and [publicly accessible information], in most cases [plaintiff] could not know with any certainty the identity of particular taxpayers");

---

[4] The Court observes that well over a thousand pre-transaction notices are filed each year. *See* LINA M. KHAN & JONATHAN KANTER, HART-SCOTT-RODINO ACT ANNUAL REPORT: FISCAL YEAR 2021, Federal Trade Commission & Department of Justice Antitrust Division (44th ed.) https://www.ftc.gov/system/files/ftc_gov/pdf/p110014fy2021hsrannualreport.pdf (last visited Jan. 16, 2023) ("In fiscal year 2021, a record-breaking 3,520 transactions were reported under the HSR Act, representing about a 115 percent increase from the 1,637 transactions reported in fiscal year 2020.").

*Citizens for Env't Quality, Inc. v. U.S. Dep't of Agric.*, 602 F. Supp. 534, 540 (D.D.C. 1984) (rejecting FOIA exemption argument because Government failed to establish that protected information could be deduced from disclosure of non-exempt information). The FTC's argument in this respect is conclusory and, thus, the FTC has failed to meet its burden pursuant to FOIA to withhold that information. *See, e.g.*, *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) (explaining that agency must provide a "detailed justification" and not just "conclusory statements" to prove that it has released all reasonably segregable information). Accordingly, the FTC may not redact the dates on which the "close at your own peril" letters were sent.

      Having concluded that the FTC cannot redact the dates on which the "close at your own peril" letters were sent, its argument concerning the boilerplate language melts away. Although the boilerplate language in the "close at your own peril" letters does not reflect specific information submitted to the FTC, the FTC argues that, because the boilerplate language is already public, it would be unduly burdensome and unnecessary to redact the exempt information while producing only the already public boilerplate language. *See Mead Data Ctr.*, 566 F.2d at 260 (FOIA does not require disclosure of non-exempt information if it is "inextricably intertwined with exempt portions."). But given that, as set forth above, the Court is already requiring the FTC to produce the dates on which the various letters were sent, not redacting the already public boilerplate language imposes no burden on the FTC.

11

Accordingly, both the boilerplate language found in the FTC's "close at your own peril" letters and the dates on which they were sent is segregable information that is not exempt from disclosure under FOIA Exemption 3 and, thus, must be disclosed.[5]

### B. FOIA Exemption 7(A)

The FTC also argues that the pre-consummation letters are exempt from disclosure under Exemption 7(A). Def.'s Mot. at 15. Because the Court holds above that the content of the letters derived from non-public pre-transaction notice information—including filers' identities—is exempt from disclosure under FOIA Exemption 3, the Court need not decide whether FOIA Exemption 7 applies to that information. The Court briefly addresses Exemption 7 with respect to the question of whether information that is already public, as well as the dates of the letters, are exempt from disclosure. The answer is no.

As relevant here, FOIA Exemption 7 exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings," among other conditions. 5 U.S.C. § 552(b)(7). "Exemption 7(A) does not authorize automatic or wholesale withholding of records or information simply because the material is related to an enforcement proceeding. . . . Rather, an agency seeking to shield records or information behind exemption 7(A) must show that disclosure could reasonably be

---

[5] If not for the Court requiring the FTC to disclose the dates of the "close at your own peril" letters (thereby allowing the public to see how often the FTC has engaged in this practice, which is exactly what FOIA is for—*i.e.*, allowing the public to see what its government is up to), the Court would not require production of the letters' boilerplate language because that information is already public and putting the FTC through that otherwise burdensome redaction exercise would be pointless. But, because it would make no sense to require the FTC to produce the letters with their dates but without the boilerplate text (which would require a *more* burdensome redaction process), the Court orders the FTC to produce both the boilerplate text and the dates.

expected perceptibly to interfere with an enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989).

With respect to the application of FOIA Exemption 7 to information that is already publicly available, the Court holds that the information is not exempt from disclosure. As explained above—and as the D.C. Circuit has observed—"'the logic of FOIA' mandates that where information requested 'is truly public, then enforcement of an exemption cannot fulfill its purposes.'" *Cottone*, 193 F.3d at 554 (citation omitted). To the extent that Bloomberg has demonstrated that information in a specific "close at your own peril" letter has already been made public by a pre-transaction filer, it cannot harm law enforcement efforts for the FTC to disclose that information.

FOIA Exemption 7 is also inapplicable to withholding the dates of the "close at your own peril" letters. The FTC contends that disclosure of the dates of the letters could be used to deduce information about transactions it is investigating. Def.'s Reply at 14. The Court disagrees that the date of a letter sent by the FTC to undisclosed parties about an undisclosed transaction will interfere with law enforcement investigations. The business entities being investigated by the FTC are already aware of the investigation because they have been sent the very "close at your own peril" letters that Bloomberg seeks. To the extent that those business entities might wish to interfere with an FTC investigation, they already have all the information that the FTC wishes to withhold from Bloomberg.

Unlike in FOIA cases where release of non-exempt information could allow the FOIA requester to deduce sensitive exempt information, *see, e.g.*, *Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 712 (D.C. Cir. 2022) (explaining that *Glomar* responses in the whistleblower context are justified because if the Government only withheld documents when a whistleblower

existed, it would risk revealing the existence and identity of the whistleblower every time the Government withheld documents, especially "when the pool of potential whistleblowers is very small, leading a revenge-seeking requester to narrow down the informant with relative ease"); *C.I.A. v. Sims*, 471 U.S. 159, 179 (1985) (upholding FOIA exemption where CIA explained how disclosure of seemingly innocuous information would permit others to deduce sensitive exempt information), here the FTC does not explain how the dates can be used to deduce sensitive exempt information.  The FTC provides no insight to the Court as to how third parties like witnesses or others who do not have information about the non-public individualized content of the FTC's "close at your own peril" letters, could use the dates of those letters—which, to reiterate, do not directly relate to the dates of pre-transaction notices—to gather information enabling them to interfere with an ongoing FTC investigation.  In other words, the FTC has failed to demonstrate how revealing the date that it sent a "close at your own peril" letter would provide anyone with useful information they could use to identify any investigation.  Thus, the FTC's argument that the dates of "close at your own peril" letters would allow parties to deduce other information is conclusory, speculative, and wholly unexplained.  Nor has the FTC demonstrated how revealing the dates the "close at your own peril" letters were sent might decrease cooperation with the FTC.  This assertion by the FTC is also speculative.  Because the FTC has not demonstrated that disclosure of the letters' dates "could reasonably be expected perceptibly to interfere with an enforcement proceeding," *North*, 881 F.2d at 1097, the Court holds that the dates of the letters are not exempt from disclosure under FOIA Exemption 7 and that the dates of the letters are segregable and must be disclosed.

## V.  CONCLUSION

In summary, the individualized content of the "close at your own peril" letters that the FTC has sent out—including the identities of the letters' recipients—is exempt from disclosure under FOIA Exemption 3.  The non-individualized boilerplate language and dates of those letters, however, are not exempt under either Exemption 3 or 7(A).  Finally, the information that Bloomberg has identified as already existing in the public domain—*i.e.*, the identities of some pre-transaction notice filers made public by the filers themselves—is not exempt from disclosure.

Accordingly, for the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the FTC's motion for summary judgment (ECF No. 11), and **GRANTS IN PART DENIES IN PART** Bloomberg's motion for summary judgment (ECF No. 14).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 16, 2024                                                        RUDOLPH CONTRERAS
                                                                                                  United States District Judge